IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>CARLOS JOSE HERNANDEZ ROMERO,<br><br>Defendant. | Case No. 1:25-mj-10 |

**AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT AND ARREST WARRANT**

I, Michael Lentine, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I serve as an Investigator with the United States Park Police ("USPP"). As such, I am an "investigative or law enforcement officer of the United States" within the meaning of 18 U.S.C. § 2510(7)—that is, an officer of the United States empowered by law to conduct investigations of and to make arrests for, among others, offenses enumerated in title 18 of the United States Code.

2. I have been employed by the USPP since February 2019. Currently, I am an Investigator assigned to the Major Crimes Unit of the USPP's Washington, D.C. Field Office. Previously, I received basic police training at the Federal Law Enforcement Training Center as well as more advanced training through the Department of Interior Investigator Training Program.

3. I submit this affidavit in support of a criminal complaint and arrest warrant charging CARLOS JOSE HERNANDEZ ROMERO ("HERNANDEZ") with involuntary manslaughter, in violation of 18 U.S.C. § 1112(a), (b).

4. The facts and information contained in this affidavit are based upon my personal knowledge of the investigation and information obtained from other law enforcement officers. All observations not personally made by me were relayed to me by the individuals who made them or are based on my review of reports, documents, and other physical evidence obtained during the course of this investigation. Unless otherwise indicated, where the statements of others are related herein, they are related in sum and substance and not verbatim.

5. This affidavit contains information necessary to support probable cause and has been prepared only for the purpose of obtaining a criminal complaint and arrest warrant. Therefore, it contains neither all of the information known to me concerning the offense nor every fact learned by the government during the course of its investigation thus far.

## FACTUAL BASIS SUPPORTING PROBABLE CAUSE

6. The George Washington Memorial Parkway (the "GW Parkway"), per 18 U.S.C. § 7(3), lies within the special maritime and territorial jurisdiction of the United States and within the Eastern District of Virginia.

7. On January 1, 2025, around 11:00 p.m., a motorist was traveling southbound in the right-hand lane of the GW Parkway in the vicinity of Theodore Roosevelt Island, near the exit for I-66 East and Route 50. Another vehicle, which was traveling northbound in the left-hand lane on the southbound side, passed the motorist. Shortly thereafter, the motorist heard the sound of a crash, stopped, backed up, and observed the aftermath of a two-vehicle crash. The motorist proceeded to call 911 to report an accident involving a vehicle driving the wrong way. The crash occurred in a section of the GW Parkway where the northbound and southbound lanes are separated by a median consisting of a rock wall.

8. Responding officers located two severely damaged vehicles: a pickup truck on its side, pointing North, that was missing its left front axle; and an SUV. The driver of the pickup truck, later identified as HERNANDEZ, was observed extracting himself from his vehicle. The driver of the SUV, later identified as L.F., an adult female, was pronounced dead on scene. HERNANDEZ and L.F. were the sole occupants of their respective vehicles. It is my understanding that HERNANDEZ does not possess a valid driver's license.

9. A responding police officer noticed an odor consistent with the consumption of alcoholic beverages emanating from HERNANDEZ, who was placed on a stretcher and then loaded into an ambulance. USPP Officer Nicholas Rice accompanied HERNANDEZ for the trip to the hospital. Officer Rice also smelled an odor consistent with the consumption of alcoholic beverages coming from HERNANDEZ, whose eyes were bloodshot. At one point in the ambulance, a medic asked HERHANDEZ whether he had consumed any alcohol, to which HERNANDEZ responded in English, "a little bit."

10. At the hospital, after HERNANDEZ underwent a CT scan, Officer Rice, who has limited Spanish language proficiency, heard a nurse ask HERNANDEZ in Spanish whether he had had any beers. HERNANDEZ responded in Spanish, "a little."

11. At the hospital, HERNANDEZ invoked his *Miranda* rights, electing not to speak with investigators about what had occurred. He did, however, initially consent to have his blood drawn. Before that could occur, HERNANDEZ was administered a roadside breath test. However, an adequate sample could not be obtained, perhaps owing to the fact that HERNANDEZ, who fractured his sternum during the accident, could not blow into the machine with sufficient force. After these failed attempts to obtain a useable breath sample, HERNANDEZ revoked his consent to have his blood drawn.

12. USPP Officer Andrew Vasquez, who speaks Spanish, interpreted for USPP colleagues who interacted with HERNANDEZ at the hospital. According to Officer Vasquez, HERNANDEZ smelled of an odor consistent with the consumption of alcoholic beverages and slurred his words. At one point, HERNANDEZ was asked if he had any questions for the USPP. According to Officer Vasquez, HERNANDEZ stated words to the effect of "I didn't do it" and "I wasn't driving." However, HERNANDEZ appeared to contradict himself by proceeding to ask where his vehicle was and suggesting that his vehicle had been hit first.

13. According to USPP Sergeant Adam Zielinski, a member of the USPP's Traffic Safety Unit who responded to the scene of the accident, the pickup truck's analog speedometer was stuck at 65 mph. The posted speed limit in the relevant section of the GW Parkway is 40 mph. When he peered into the truck, Sergeant Zielinski did not observe any alcoholic beverage containers, nor did he smell the odor of alcohol emanating from the vehicle.

## CONCLUSION

14. Based on the foregoing, I submit there is probable cause to believe that on or about January 1, 2025, on the GW Parkway, within the Eastern District of Virginia, CARLOS JOSE HERNANDEZ ROMERO, did unlawfully kill L.F. in the commission of an act, not amounting to a felony, namely, (a) operating a motor vehicle while under the influence of alcohol, drugs, and any combination thereof, to a degree that rendered him incapable of safe operation, in violation of 36 C.F.R. § 4.23(a)(1); (b) driving a motor vehicle on a highway recklessly and in a manner so as to endanger the life, limb, and property of any person, in violation of 36 C.F.R. § 4.2, adopting Va. Code § 46.2-852; and (c) driving a motor vehicle on a highway at a speed of 20 miles per hour or more in excess of the applicable maximum speed

limit, in violation of 36 C.F.R. § 4.2, adopting Va. Code § 46.2-862, all in violation of 18 U.S.C. § 1112(a), (b).

Respectfully submitted,

Michael Lentine
Investigator
United States Park Police

Sworn to me by telephone in accordance with Fed. R. Crim. P. 4.1 this 2nd day of January, 2025.

The Honorable William B. Porter
United States Magistrate Judge